# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Rocky Montgomery, | : | Case No. 1:08CV00465 |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| First Choice Concrete, Inc., et al., | : | |
| Defendants | : | |

  This action is before this Court upon cross motions for summary judgment filed by the plaintiff, Mr. Rocky Montgomery, and the defendants, First Choice Concrete, Inc. ("First Choice"), and Mr. Roger Henderson, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

  Plaintiff Montgomery alleged that he was unlawfully terminated from employment by First Choice, a concrete and excavation contractor, and Mr. Henderson, its owner and president[1], in retaliation for having participated as an opt-in party plaintiff in a previous lawsuit, Edwin Roman, et al. v. First Choice Concrete, Inc., Case No. 1:07CV0756, ("Roman lawsuit") brought against the defendants alleging that their payroll practices[2] violated the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"). The Roman lawsuit was ultimately

---

[1] Prior to starting up First Choice in 2003, Mr. Henderson was the vice president/manager of RAM Excavating, the corporate shares of which he acquired in 2001. He hired RAM's employees, including plaintiff, to work at First Choice.

[2] Specifically, it was alleged that First Choice failed to pay employees overtime for work performed over 40 hours in a single work week, as opposed to unlawfully paying them for overtime only after they worked 80 hours in a two week work period.

settled on November 9, 2007, with settlement funds having been received by the plaintiffs, including the plaintiff herein, on November 21, 2007.

The following day, November 22, 2007, was Thanksgiving.

The next day, Friday, November 23, 2007, Mr. Henderson called all of his employees,[3] including Mr. Montgomery, to a meeting at which he issued First Choice's newly written handbook of "Policies and Procedures." According to Mr. Henderson, as well as employees Arnold Sullivan, Harvey Lance, Jr., Jerome Shepherd, and Mike Reisinger, Mr. Henderson read every word of the handbook out loud to the employees, and informed them that the policies went into effect immediately. One provision required 30 days notice to "Roger," referring to Mr. Henderson, prior to taking a vacation, and stated that vacation timing was within his discretion. Another outlined an absenteeism policy:

> Any employee who fails to work on a scheduled workday without prior approval will be given the following workday off without pay. Continuous absenteeism will result in additional days of suspension or termination. Three unexcused days of absence within any 9- day period will result in termination.
>
> If an employee is ill they are expected to contact Roger to report they will not be at work. An employee must report before 7:30 am and speak to Roger. They are NOT to leave a message on voice mail or with any other person. Failure to report directly to Roger will be considered an unexcused absence. Any employee who fails to report to work without notice or excuse will be considered to have abandoned their job on the third consecutive day and will no longer be employed with this company.
>
> A doctor's written excuse and release will be required before returning to work due to any injury or illness.

The final statement in the handbook was:

---

[3]At that time there were six full-time and three part-time employees.

> These are the rules and policies that First Choice Concrete has always abided by. They have been put into written form for your clarification.

It is undisputed that at the end of the meeting the plaintiff signed a copy of the statement of policies, indicating that he had read them.

According to the plaintiff, prior to that meeting he had planned to take the next week off work in order to go hunting, which he claims to have always done the week after Thanksgiving. Despite having read the handbook, and having listened to Mr. Henderson read the handbook, the plaintiff did not inform Mr. Henderson of his planned vacation.

Instead, he did not show up for work on Monday, November 26, 2007.

Plaintiff claims that because he had always taken vacation time during the week after Thanksgiving and had never given his employer notice of that fact, he did not believe that he was required to do so after reading/signing the handbook. Mr. Henderson, on the other hand, asserts that he was unaware that the plaintiff would be taking vacation during that week.

Two other employees also decided to take that week off. The first, Mr. Arnold Sullivan, informed Mr. Henderson of his plan ahead of time as he was required to do under the terms of the handbook. The second, Mr. Mike Reisinger[4], also failed to show up for work on that Monday, without having previously notified Mr. Henderson of his intentions to take the week off. Mr. Henderson had Mr. Reisinger's cell phone number and contacted him to inquire as to why he had not come to work, at which time he told Mr. Reisinger that he was not authorized to take vacation time and instructed him to return to work. Mr. Reisinger returned to work the following day.

Mr. Henderson has testified that he did not have access to a phone number for the plaintiff,

---

[4]Mr. Reisinger was not a plaintiff in the Roman lawsuit.

3

in light of the fact that the plaintiff did not have a cell phone and his home telephone number was unlisted. According to Mr. Henderson, he drove to plaintiff's home on Monday, November 27th to demand that he return to work, but there was no response to his knocks on the door. He returned the following day, but once again got no response when he knocked on the door.

Once the plaintiff failed to return to work by Wednesday, November 28th, Mr. Henderson sent him a letter that day in which he informed the plaintiff as follows:

> Please be advised that you have not reported to work for the following four days: Sat. 11/24/07[5]; Mon. 11/26/07, Tues. 11/27/07 and Wed. 11/28/07.
>
> As you have failed to report to work or attempt to give any reason why you have done so, it is determined that you have therefore abandoned your job with this company.
>
> Be advised that due to your job abandonment any and all benefits are also forfeited. This includes health insurance which will cease to be in effect immediately.

Plaintiff testified upon deposition that although he did not see the letter until he returned from vacation, his wife telephoned him and told him about the letter and its contents. Nevertheless, despite having been so told he did not contact Mr. Henderson, nor did he return to work to discuss things with him. He admitted that he should have done so, in the following colloquy from his deposition:

> Q. You didn't think that if Roger thought that you abandoned your employment, that maybe you should have given him a call and said, Roger, I didn't abandon my employment, there's some kind of misunderstanding here? You should have done that, shouldn't you?
>
> A. Yeah, I guess.

---

[5]This date was an optional work day, which the defendants have not relied upon as evidence that the plaintiff violated the company's policies.

> Q. But you didn't.
>
> A. Nope.

(Montgomery depo. II, pp. 76-77). He also admitted that if he had not violated the vacation policy he would most probably still be working at First Choice. Mr. Henderson confirmed that during his deposition testimony, when he stated that he would have reinstated the plaintiff if he had been contacted:

> A. Yeah, that was a communication letter, you know...That was– I establish rules, I got to do something with these rules. You need to communicate with me. And until this day, until we got sued here, that was my communication...
>
> Q. You received a letter from our law firm, that happened before the lawsuit was filed, right?
>
> A. At that point, when you demand money, to me, that's the end of the line. Can Rock come back to work, sure. Can I give him $150,000.00, no. Can I give him $5,000.00, no.

(Henderson depo., pp. 64-65). In fact, plaintiff admitted during his deposition testimony that he had been employed for First Choice and its predecessor, RAM Excavating, Inc., for approximately 26 years, during which he quit for extended periods of time without notifying Mr. Henderson, but was rehired when he asked to come back.

In support of their motion for summary judgment the defendants argue that there is no evidence of retaliation under the FLSA against the plaintiff in light of the fact that there was no adverse employment action taken against him, that even if there was an adverse action taken against him he cannot prove a causal connection between that act and a protected activity, that they have provided a legitimate, non-retaliatory reason for any action taken against him, and that such reason was not pretextual. Defendants further argue that the same reasoning applies to defeat his state law

5

claim.

Plaintiff argues that he is entitled to summary judgment in light of the fact that he established a prima facie case of retaliation under the FLSA, and that the proffered reason for the adverse employment action taken against him was pretextual, and that the same rationale applies to warrant summary judgment on his behalf on his state claims.

The disposition of a motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to  judgment as a matter of law."  It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues.  Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].

It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-moving party. Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992);  Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992);  Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317

(1986); and <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).[6] The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment; that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are "implausible." <u>Id</u>. at 1479-1480 (Footnotes and citations omitted.)

The FLSA has been alluded to as "a broadly remedial and humanitarian statute" which must be liberally construed. <u>Fegley v. Higgins</u>, 19 F.3d 1126, 1132 (6th Cir. 1994), <u>cert. denied</u>, 513 U.S. 875 (1994), citing <u>Dunlop v. Carriage Carpet Co.</u>, 548 F.2d 139, 143 (6th Cir. 1977).

The FLSA prohibits retaliatory conduct undertaken by an employer against an employee who has asserted rights protected under the Act. It is a violation to:

---

[6]The court's reference to those rulings as representing a "new era" of "dramatic change" may no longer hold true a number of years later, but the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

> [D]ischarge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding[.]

29 U.S.C. §215(a)(3). The assertion of such statutory rights need not be made in an official way; filing an unofficial or informal complaint with an employer is sufficient to trigger the anti-retaliation protections. Mc Daniel v. Transcender, LLC, 119 Fed. Appx. 774, 779 (6th Cir. 2005); Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004).

In cases such as this where there is no direct evidence of retaliation for having asserted rights under the FLSA, a plaintiff asserting such a claim must employ the burden shifting analysis articulated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Adair v. Charter County of Wayne, 452 F.3d 482 (6th Cir. 2006); Greene v. Westwood Property Management, LLC, Case No. 3:07CV0955, 2009 U.S.Dist. LEXIS, *47-48 (M.Dist. Tenn)(May 12, 2009)(J.Echols). In Adair the Sixth Circuit Court of Appeals articulated the following steps to be followed by a plaintiff raising such a claim:

> The burden-shifting analysis in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*, applies to a FLSA claim of retaliation. *See, e.g., Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004)*. To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *See, e.g., Williams v. Gen. Motors Corp., 187 F.3d 553, 568 (6th Cir. 1999)*. Such a prima facie showing of retaliation "creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the

8

> adverse employment action. *McDonnell Douglas, 411 U.S. at 802*. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination. *Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996)*.

Adair, supra at 489.

Stated differently, in the context of an allegation of retaliation under the FLSA, the plaintiff must show that "not only did the employee engage in activity protected by the FLSA, [but also that] his termination was a causal result of engaging in such activity." Greene v. Westwood Property Management, LLC, supra at *48. Although the plaintiff in this case clearly engaged in a protected activity by his participation in the Roman lawsuit, this Court finds nothing in the record supporting his contention that there was a causal connection between his participation in that lawsuit and the November 28th letter in which Mr. Henderson informed him that in light of his failure to report to work on three consecutive days, as well as his subsequent failure to make contact with his employer in that regard, he was considered to have abandoned his job. This Court finds that the record is clear that it was plaintiff's actions, not those of his employer, which triggered his unemployed status.

This being so, the plaintiff has failed to make out a prima facie case under the Adair standard.

If the plaintiff had established a prima facie case, this Court would further find that the defendants have made a strong showing of legitimate, non-retaliatory reasons for his termination, which have not been shown to be untrue.

After the Roman settlement was concluded and implemented it was entirely permissible for First Choice to reevaluate and memorialize its company policies in a handbook and, having done so, to enforce the rules it had placed into writing, even if practices addressed in the handbook had

9

not been uniformly enforced in the past. There is no dispute between the parties that plaintiff was made aware of the provisions of the written handbook in which the three day policy and the need to notify his employer of any such absence were memorialized. Likewise, there is no dispute that the plaintiff failed to comply with the rules in that regard.

The plaintiff could have easily informed Mr. Henderson at the meeting where the rules were read to him that he had planned a vacation for the following week, but he did not mention his plans. He has admitted being made aware of the November 28th letter, which he heard about from his wife while he was on his hunting vacation, but he still failed to contact his employer in an attempt to work out any misunderstanding. The plaintiff has offered nothing to contradict Mr. Henderson's testimony that had the plaintiff contacted him he would have allowed the plaintiff to return to work, which is supported by the fact that he had re-hired the plaintiff several times in the past after the plaintiff had failed to come to work without contacting anyone to tell them he would not be at work, and also following periods when the plaintiff had left his job to work elsewhere.

While it is true that two other employees who had planned hunting vacations during the same week as plaintiff's time off were not terminated, which the plaintiff points to as disparate treatment, this Court finds that they were not treated more favorably, in light of the facts that one followed the rules by informing his employer ahead of time and the other responded to the employer when contacted and returned to work upon being told to do so. The fact that the plaintiff could not be reached by telephone may be reflective of flawed recordkeeping, but not retaliatory conduct, particularly considering Mr. Henderson's testimony that he went to the plaintiff's home in an attempt to contact him regarding his unexcused absence.

In essence, the plaintiff's argument seems to be that because he was an unreliable employee

for many years and that such conduct was tolerated his employer's timing in holding him accountable this time was suspect, which is unpersuasive at best considering that this was the first such behavior after the new handbook was issued, delivered, and read out loud to the employees, and they each, including plaintiff, signed that they understood and would abide by its terms. To think that his employer would go to that extent and then not enforce the provisions of the handbook because his irresponsible behavior had been tolerated in the past was pure folly on the plaintiff's part.

In light of the facts that (a) there is no evidence that plaintiff's termination was causally related to his involvement in the <u>Roman</u> litigation, and (b) the defendants have offered evidence of a legitimate, non-retaliatory basis for action taken, as to which the plaintiff has failed to offer reliable evidence of pretext, this Court concludes that there is no genuine issue of material fact preclusive of granting defendants' motion for summary judgment. That being so, it follows that the defendants' motion for summary judgment must be granted, and plaintiff's motion for summary judgment must be denied.

        s/DAVID S. PERELMAN
        United States Magistrate Judge

DATE: July 8, 2009